ERMA TYLER *et al.*, Plaintiffs-Appellants, v. J. C. PENNEY COMPANY, Defendant-Appellee (The La Salle National Bank, as Trustee, *et al.*, Defendants; Market Place Shopping Center, Defendant and Third-Party Plaintiff-Appellee; J. C. Penney Company *et al.*, Third-Party Defendants).

Fourth District   No. 4—85—0851

Opinion filed July 28, 1986.—Rehearing denied August 28, 1986.

Summers, Watson & Kimpel, P.C., of Champaign, for appellants.

D. Cameron Dobbins, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee Market Place Shopping Center.

Heyl, Royster, Voelker & Allen, of Urbana (Michael E. Raub and Bruce L. Bonds, of counsel), for appellee J. C. Penney Company, Inc.

JUSTICE MORTHLAND delivered the opinion of the court:

Plaintiffs, husband and wife, filed an eight-count complaint on January 21, 1983, seeking damages for injuries allegedly sustained when Erma Tyler slipped and fell outside a J. C. Penney store in the Market Place Shopping Center in Champaign.

Plaintiffs' complaint named four defendants: J. C. Penney Company, Inc.; the La Salle National Bank as trustee under a certain trust and identified as the legal owner of the premises; the development firm of Landau-Heyman, Inc.; and the "Market Place Shopping Center" (Market Place). Service of summons, however, was only effectuated on the general manager of Market Place. The record indicates no attempt to serve any of the other three named defendants, and in fact no service was had upon them.

On February 14, 1983, defendant Market Place filed its answer to the complaint, which generally denied the plaintiffs' allegations. Later, on February 22, 1984, Market Place filed a motion to dismiss the complaint pursuant to Supreme Court Rule 219(c) (103 Ill. 2d R. 219(c)) based upon the plaintiffs' purported failure to respond to inter-

rogatories.

Then, on March 2, 1984, Market Place filed a third-party complaint for contribution against J. C. Penney, Landau-Heyman, and the La Salle National Bank. That third-party complaint, however, was subsequently dismissed as to the La Salle National Bank and Landau-Heyman upon motion of Market Place. On April 21, 1985, J. C. Penney appeared and moved to dismiss the plaintiffs' complaint pursuant to Supreme Court Rule 103(b) (87 Ill. 2d R. 103(b)) for lack of diligence in obtaining service on that defendant. J. C. Penney also at that time answered the third-party complaint.

Discovery continued in this matter. Finally, on May 29, 1985, Market Place filed a motion to dismiss under section 2—619(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(2)) alleging that it did not have legal capacity to be sued. In support thereof, Market Place attached the affidavit of Eugene Warner, vice-president and corporate counsel for Landau-Heyman. That affidavit stated that Market Place Shopping Center is not a legal entity, and therefore is not subject to suit in Illinois. Instead, that denotation represents the "common description of the diverse, independent, [*sic*] businesses which comprise the entire Shopping Mall." The affidavit further recounted that Market Place is not a corporation, partnership, sole proprietorship, joint venture, or other such entity recognized in law.

Upon a hearing, the circuit court of Champaign County on June 18, 1985, granted the motion of Market Place and dismissed the action against it with prejudice on the basis that it did not have legal status to be sued. Furthermore, the court dismissed with prejudice the action against J. C. Penney for lack of diligence by the plaintiffs in obtaining service. The third-party action was also dismissed.

For reasons unknown to us, defendant Market Place on July 15, 1985, moved for leave to file an amended answer, and on July 22, 1985, moved for leave to substitute a new affidavit of Eugene Warner. These motions were granted, and Market Place filed an amended answer accompanied by affidavit reflecting the fact that it was not a legal entity with capacity to be sued.

Plaintiffs now appeal the dismissal of their cause of action. Initially, though, we must deal with a threshold issue, raised by the defendants, concerning whether we have jurisdiction to hear this appeal.

The order dismissing the plaintiffs' complaint with prejudice was entered on June 18, 1985. Subsequently, on July 12, 1985, plaintiffs filed a "Post-Trial Motion for Reconsideration." On August 6, 1985,

two days before a scheduled hearing on that motion, plaintiffs filed a motion for a continuance and for leave to conduct further discovery. The court on August 8 granted the plaintiffs' motion for a continuance "providing that [the] motion of plaintiff [sic] for reconsideration shall be heard no later than 90 days from this date." Should the plaintiffs fail to move for such a hearing within 90 days however, the court also provided that "the motion for reconsideration shall stand as denied unless good cause is shown otherwise."

On November 12, 1985, once 90 days had expired and the plaintiffs had not yet set a hearing for their motion, the court denied the motion for reconsideration "[p]ursuant to the terms" of its August 8 order. Plaintiffs thereafter filed their notice of appeal on December 9, 1985.

■ The filing of a timely notice of appeal is jurisdictional. (*English v. English* (1979), 72 Ill. App. 3d 736, 393 N.E.2d 18; 87 Ill. 2d R. 301.) Under Supreme Court Rule 303 (103 Ill. 2d R. 303), notice of appeal must be filed within 30 days after the entry of a final judgment or within 30 days after the entry of an order disposing of a timely filed post-trial motion directed against the judgment. Certainly, the June 18, 1985, order dismissing the entire complaint with prejudice constituted a final judgment for purposes of this rule. Still, a party is permitted to file one post-judgment motion attacking the validity of that judgment within 30 days of its entry (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203), and the plaintiffs' "post-trial" motion of July 12, 1985, was timely filed.

Defendants point to the language of the August 8, 1985, order allowing the plaintiffs' motion for a continuance, which states that the motion for reconsideration "shall stand as denied" should the plaintiffs fail to obtain a hearing on that motion within 90 days. Defendants urge that the failure of the plaintiffs to in any way present this motion for a determination on the merits within the 90-day deadline constituted an abandonment of that motion. Thus, defendants continue, the judgment became final as of the June 18, 1985, order, and the time for filing a notice of appeal began to run as of that date. (See *English v. English* (1979), 72 Ill. App. 3d 736, 393 N.E.2d 18; *Page v. Estate of Page* (1978), 66 Ill. App. 3d 214, 383 N.E.2d 615; *Richey Manufacturing Co. v. Mercantile National Bank* (1976), 40 Ill. App. 3d 923, 353 N.E.2d 123.) As the argument goes, plaintiffs' failure to file their notice of appeal within 30 days of the June 18, 1985, order requires that we dismiss this appeal.

■ Granted, a party should ordinarily do more than merely file a motion. To avoid circuity and delay, a party should affirmatively bring

that motion to the attention of the court by requesting a hearing and obtaining a ruling on that motion. Nevertheless, we do not view the running of the 90-day court-imposed deadline as an abandonment of the plaintiffs' post-judgment motion such that the time for filing a notice of appeal effectively began as of the June 18 order. The requirement that plaintiffs call up their motion for a hearing within 90 days was presumably imposed according to a local circuit court rule. The fact that the plaintiffs could not argue the merits of their motion for reconsideration due to their own failure to comply with a circuit rule is irrelevant. (*Slavick v. Michael Reese Hospital & Medical Center* (1980), 92 Ill. App. 3d 161, 415 N.E.2d 1060.) We find that the November 12 order was the final and appealable order, and thus the plaintiffs' notice of appeal on December 9, 1985, was timely filed. Thus, we have jurisdiction to hear this case.

With that point resolved, we next turn to the merits of the parties' respective arguments. The plaintiffs essentially contend that the conduct of Market Place in this matter estops them from denying that they have legal capacity to be sued, and that Market Place somehow waived its argument that it cannot be a proper party defendant. Plaintiffs point to the appearance entered by "Market Place Shopping Center" as well as an answer and a third-party complaint filed by that party. Plaintiffs further point to "extensive discovery" conducted in this lawsuit by a defendant purporting to act as the "Market Place Shopping Center." Finally, plaintiffs call this court's attention to settlement negotiations entered into with an insurance carrier claiming to act on behalf of Market Place as depicted by copies of releases and settlement drafts purportedly submitted by the insurance company and rejected by the defendants. They conclude that to affirm the dismissal of their complaint based upon lack of legal capacity, after Market Place had engaged in litigation over a two-year period, would allow the defendant "to perpetrate a fraud on the court."

■ Before we answer the plaintiffs' contentions here, we feel compelled to comment on the procedure employed below based upon our own observations of the record. We note, from the record, that Market Place originally answered the plaintiffs' complaint. Later, Market Place filed a motion to dismiss without asking leave of the court to withdraw its answer. Normally, a motion to dismiss under section 2—619 will be filed in lieu of any other responsive pleading. However, an objection to a complaint may be raised at any time, and a court has discretion to allow a defendant who has already answered to withdraw that answer and file a motion to dismiss, so long as no prejudice is shown to the plaintiff. *Wheeler v. Caterpillar Tractor Co.*

(1984), 123 Ill. App. 3d 539, 462 N.E.2d 1262 (court held that allowing defendant to withdraw its answer filed two years earlier and to substitute a motion to dismiss based upon a failure to state a cause of action was not an abuse of the court's discretion), *rev'd on other grounds* (1985), 108 Ill. 2d 502, 485 N.E.2d 372, *cert. denied* (1986), ___ U.S. ___, 90 L. Ed. 2d 187, 106 S. Ct. 1641.

An answer and a motion to dismiss, though, are by no means related. By its answer, a party either admits or denies the allegations contained in the complaint, thereby framing the issues to be resolved later by litigation. A motion to dismiss, on the other hand, attacks the sufficiency of the complaint. Thus, proper practice would require that, where a defendant has answered but later seeks to file a motion to dismiss, that defendant must also seek the court's permission to withdraw its answer. Theoretically, a court should not have before it on file at the same time both an answer and a motion to dismiss by the same party, as the two forms of pleading are inapposite.

Here, defendant Market Place did not request leave to withdraw its answer before it filed either of the motions to dismiss. In point of fact, Market Place amended its answer to reflect its alleged lack of legal capacity to be sued after the motion to dismiss was actually granted. We are also cognizant, though, that the plaintiffs at no time objected to this procedure either before the circuit court or on appeal. We are of the opinion, then, that any error below, if indeed error existed, was waived by the plaintiffs' failure to present the matter to the court.

■ Continuing, we do agree with the trial court that the complaint was properly dismissed as to Market Place because it is not a legal entity recognized by law. A prime requisite to maintaining a proper lawsuit is that the parties, whether plaintiffs or defendants, be either a natural or an artificial person. (*Bavel v. Cavaness* (1973), 12 Ill. App. 3d 633, 637, 299 N.E.2d 435.) Our law recognizes that legal corporations, partnerships, or other associations registered with this State are, in effect, artificial persons amenable to lawsuit in this jurisdiction.

■■ We have before us now, however, a suit brought against an entity that is not recognized under our laws. According to the defendants' uncontradicted affidavit, "Market Place Shopping Center" is the common description given to an amalgamation of stores in Champaign, and is therefore not a recognized legal entity. Where a suit is brought against an entity which is legally nonexistent, the proceedings are void *ab initio*, and its invalidity may be called to the court's attention at any stage of the proceedings. (*Lewis v. West Side Trust*

& *Savings Bank* (1941), 377 Ill. 384, 385, 36 N.E.2d 573; *Reed v. Long* (1970), 122 Ill. App. 2d 295, 297, 259 N.E.2d 411.) A complaint which does not name a party legally in existence is in reality a nullity as to that party.

While we cannot condone the conduct of Market Place in defending this matter for over two years before asserting its lack of capacity, the fact remains that "Market Place Shopping Center" does not exist legally. Accordingly, the proceedings against it are void, a point which may be raised at any time. It is immaterial that discovery was conducted and both an answer and a third-party complaint were filed by an entity purporting to be Market Place during this period of time, as there is no such legal *persona*.

We are also of the opinion that the plaintiffs may no longer maintain an action against J. C. Penney. Although the complaint named J. C. Penney, a recognized legal entity, as a party defendant, no service was ever had upon it. As far as we can determine from the record, service was never even attempted on J. C. Penney, although the plaintiffs clearly had ample opportunity to do so.

There can be no doubt that plaintiffs failed to exercise reasonable diligence in obtaining service on J. C. Penney after the expiration of the applicable statute of limitations as called for under Supreme Court Rule 103(b) (87 Ill. 2d R. 103(b)). The date of the alleged injury which gave rise to this action was January 23, 1981; the two-year statute of limitations for personal injuries ran on January 23, 1983, or two days after the complaint was filed. From early 1983 until the middle of 1985, when the complaint was dismissed, J. C. Penney, a national company whose local whereabouts were certainly known, was never served by the plaintiffs. We find that none of the six factors recognized by our courts in considering whether a plaintiff's efforts to obtain service reflect reasonable diligence are at all availing to the plaintiffs' position here. (See *Hanna v. Kelly* (1980), 91 Ill. App. 3d 897, 414 N.E.2d 1262; *Daily v. Hartley* (1979), 77 Ill. App. 3d 697, 396 N.E.2d 586; *Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 388 N.E.2d 1261.) We therefore hold that the trial court properly acted within its discretion in dismissing the complaint as to J. C. Penney under Rule 103(b).

Plaintiffs nevertheless maintain that, when J. C. Penney appeared herein, it waived service of process "in the usual manner." However, J. C. Penney only entered a general appearance in response to proper service on the third-party complaint, and not on the plaintiffs' complaint. J. C. Penney answered the third-party complaint, but its only response to the plaintiffs' complaint was to file a motion to

dismiss for failure to comply with Rule 103(b). J. C. Penney never filed an answer to the plaintiffs' complaint. Instead, we believe it properly invoked the court's jurisdiction in asking the court to dismiss that action by specifically objecting to lack of service under a supreme court rule. *Meyer v. Wardrop* (1976), 37 Ill. App. 3d 243, 345 N.E.2d 762; *Caliendo v. Public Taxi Service, Inc.* (1966), 70 Ill. App. 2d 86, 217 N.E.2d 369.

Next, we note that the misnomer provisions of section 2—401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—401) do not aid the plaintiffs here. Under that statute, the misnaming of a party cannot serve as grounds for dismissal of an action, and the name of the party may be corrected upon motion and proper proof. (Ill. Rev. Stat. 1983, ch. 110, par. 2—401(b).) The misnomer rule is narrow, though, and will be invoked only where an action is brought and summons served upon a proper party (who thus is given actual notice of the lawsuit), but under the wrong name. *Hatcher v. Kentner* (1983), 120 Ill. App. 3d 571, 458 N.E.2d 131; *Ashley v. Hill* (1981), 101 Ill. App. 3d 292, 427 N.E.2d 1319.

While plaintiffs argued below that they should be allowed to correct the name of defendant Market Place, they did not raise this argument on appeal. Thus, we may consider the point waived. (*URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 236, 427 N.E.2d 1295, 1301.) In any event, the problem here is not that the plaintiffs misnamed a proper party, it is that they did not even name a proper party, and they may not claim the benefits of the misnomer rule.

Finally, plaintiffs assert that the insurance carrier for Market Place was the "real party in interest" in this matter, and accordingly leave should have been granted by the court below to add that company as an additional party defendant. Apparently the plaintiffs believe the insurance company, by entering into settlement negotiations and offering a draft and release, was somehow transformed into a defendant in this matter. Plaintiffs overlook the oft-stated premise in Illinois that, absent fraud, an injured party may not seek recovery for personal injuries directly against an insurance carrier for the negligence of its insured before judgment. *Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 485 N.E.2d 327.

It is perhaps unfortunate that the plaintiffs only served one defendant which, as it turns out, lacked legal capacity to be sued. However, three other apparently proper defendants were named in the complaint. Incredibly, service was never attempted upon the parties. Plaintiffs should not now be heard to complain when their own inaction led to the dismissal of their complaint.

Accordingly, the order of the circuit court of Champaign County dismissing the plaintiffs' complaint with prejudice is hereby affirmed.

Affirmed.

WEBBER and SPITZ, JJ., concur.